UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| COZEN O'CONNOR, PC, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : No. 3:08cv1773 (MRK) |
| | : |
| JEFFREY M. NORMAN, | : |
| | : |
| Defendant. | : |

## RULING AND ORDER

In this case, Plaintiff Cozen O'Connor, PC ("Cozen O'Connor"), a national law firm based in Philadelphia, Pennsylvania, seeks to recover legal fees and costs from *pro se* Defendant Jeffrey M. Norman. Cozen O'Connor began representing Mr. Norman in October 2004, and eventually filed a complaint in the Delaware Chancery Court on Mr. Norman's behalf on December 5, 2005. The defendants later removed that action – in which Mr. Norman sought damages against a number of defendants for breach of contract and for related claims – to the United States District Court for the District of Delaware. *See Norman v. Elkin*, No. 1:06cv5-LPS (D. Del. removed Jan. 3, 2006).[1]

---

[1] Following a jury trial, the United States District Court for the District of Delaware initially entered a judgment in Mr. Norman's favor in the amount of $191,819.00. *See* Judgment [doc. # 123] in *Norman v. Elkin*, No. 1:06cv5-LPS (D. Del. May 18, 2009). More recently, however, after post-trial briefing, the Delaware court granted judgment as a matter of law in favor of the defendants on a number of Mr. Norman's claims. *See Norman v. Elkin*, 726 F. Supp. 2d 464, 467 (D. Del. 2010). The Delaware court also reduced the total damage award to Mr. Norman to $1.00 plus post-judgment interest. *See* Amended Judgment [doc. # 158] in *Norman v. Elkin*, No. 1:06cv5-LPS (D. Del. July 30, 2010). Mr. Norman's motion to alter the amended judgment – or alternatively, for a new trial – remains pending before the Delaware court.

1

Cozen O'Connor and Mr. Norman never entered into a written fee agreement. Now that Cozen O'Connor is attempting to collect fees and costs under an *unwritten* fee agreement, the parties dispute the terms of that agreement. Mr. Norman asserts that he only agreed to pay Cozen O'Connor for its services contingent upon the firm's securing a victory in the Delaware action. Cozen O'Connor, on the other hand, asserts that Mr. Norman agreed to pay the firm an hourly rate and to pay the firm's costs regardless of outcome. Cozen O'Connor further asserts that it sent Mr. Norman invoices for it services during the representation, and that Mr. Norman acknowledged in a 2007 email responding to the invoices that he owed the firm over $150,000.00 for the services it had rendered to that point. Cozen O'Connor withdrew as Mr. Norman's counsel in the Delaware action in 2008 – according to Cozen O'Connor, because of Mr. Norman's to pay for the firm's services.

The current predicament should be a reminder to both parties as well as to readers of this Ruling and Order that "[p]rudent lawyers" – and prudent clients – "will reduce to writing *all* fee agreements, whether contingent or not." 1 Geoffrey C. Hazard, Jr. and W. Williams Hodes, *The Law of Lawyering* § 1.5:301, at 112 (2d ed. 1990) (Supp. 1991) (emphasis added). The sole purpose of this Ruling and Order is to address whether, regardless of how imprudent their arrangement may have been, Cozen O'Connor and Mr. Norman's unwritten fee agreement is nonetheless legally enforceable. The Court emphasizes that nothing in this Ruling and Order should be construed as resolving any of the factual disputes in this case. Nor will this Ruling and Order be the Court's last word on the applicable law, as Rule 52(a)(1) of the *Federal Rules of Civil Procedure* requires this Court to set forth both its findings of facts and its conclusions of law after the close of evidence in the upcoming bench trial. *See* Fed. R. Civ. P. 52(a)(1). As set forth in further detail below, the

Court concludes that under the circumstances of this case, an unwritten attorney fee agreement – even one that makes payment contingent on outcome – is fully enforceable.

On October 1, 2010, the Court ordered the parties to submit briefs "regarding whether an attorney who did not execute a written retainer agreement with a client may prove the existence of a contract and recover fees based on emails and unwritten agreements." *See* Order [doc. # 36]. The briefs that Cozen O'Connor and Mr. Norman submitted in response show that there is a potential choice of law dispute in this case. When a district court sits in diversity, it must apply the choice of law principles of the state in which it sits. *See Schwartz v. Liberty Mutual Ins. Co.*, 539 F.3d 135, 147 (2d Cir. 2008). In Connecticut, the threshold question in choice of law analysis is "whether there is an outcome determinative conflict between applicable laws of the states with a potential interest in the case." *Chien v. Skystar Bio Pharmaceutical Corp.*, 623 F. Supp. 2d 255, 262 n.6 (D. Conn. 2009); *see also Burns v. Quinnipiac University*, 120 Conn. App. 311, 320 (2010) (quoting and relying on this Court's summary of Connecticut choice of law principles in *Chien*). If there is no outcome determinative conflict, then there is no need to determine which state's law should be applied. *See Chien*, 623 F. Supp. 2d at 262 n.6; *Burns*, 120 Conn. App. at 320.

Cozen O'Connor's Brief [doc. # 38] discusses three different states' laws on attorney fee agreements, and the Court agrees that three different states have a potential interest in this case. First, Cozen O'Connor litigated on behalf of Mr. Norman in Delaware, and Delaware could therefore potentially have an interest in this case. Second, Cozen O'Connor is primarily based in Pennsylvania, and Pennsylvania could therefore potentially have an interest in this case. Third, and finally, Mr. Norman resided in Connecticut when he entered into the agreement with Cozen

O'Connor, and Connecticut could therefore potentially have an interest in this case. The Court will briefly set forth the applicable principles of Delaware, Pennsylvania, and Connecticut law. However, at this time, the Court ultimately need not decide which state's law applies in this case.

Cozen O'Connor argues that the Court must apply Delaware law in this case. Under Delaware law, attorney fee agreements are enforceable regardless of whether they were ever set forth in writing. *See Bouchard Margules & Friedlander v. Gaylord*, No. Civ. A. 01C-131CLS, 2003 WL 22852615, at *2 (Del. Super. Dec. 1, 2003). Rule 1.5(b) of the Delaware Rules of Professional Conduct expresses a preference that agreements about the scope of an attorney's representation and about the basis or rate of fees to be charged to a client be communicated to the client in writing within a reasonable time after the attorney starts representing the client. *See* Del. R. Prof. Conduct 1.5(b) ("The scope of the representation and the basis or rate of the fee and expenses . . . shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate."). Mr. Norman suggests that even if the invoices Cozen O'Connor sent him set forth the scope of the firm's representation and the basis or rate of the firm's fees, the invoices were not sent within a reasonable time after the representation began. *See* Def.'s Br. [doc. # 39] at 1. But Delaware Rule 1.5(b) expresses a *preference* rather than a *requirement*. *See In re Estate of Green*, No. 93948, 1993 WL 93384, at *3 (Del. Ch. Mar. 5, 1993) ("[A]t no time before this fee dispute arose did the petitioner reduce the . . . fee arrangement to writing. If only to protect himself against the possibility of not being compensated for his work, he *should have* done so." (emphasis added)).

4

Mr. Norman's position in this case is that his unwritten agreement with Cozen O'Connor made payment contingent on the firm's securing a victory in the Delaware action. *See* Def.'s Br. [doc. # 39] at 1. If Mr. Norman is correct about the terms of the unwritten agreement – and the Court does not decided at this time whether he is – then the Delaware Rules of Professional Conduct did require Cozen O'Connor to set forth the terms of the agreement in writing and to obtain Mr. Norman's signature on a written agreement. *See* Del. R. Prof. Conduct 1.5(c). Cozen O'Connor thus would have violated that requirement by entering an unwritten contingency fee agreement with Mr. Norman. However, the Delaware Supreme Court has "[t]he inherent *and exclusive* authority for disciplining members of the Delaware bar" for violating the Delaware Rules of Professional Conduct. *In re Maguire*, 725 A.2d 417, 423 (Del. 1999). Other courts lack the authority to impose sanctions for violating the Delaware Rules of Professional Conduct – including the sanction of voiding an agreement that an attorney entered into with a client in violation of those Rules. *See San Antonio Fire & Police Pension Fund v. Bradbury*, C.A. No. 446-VCN, 2010 WL 4273161 at *13 n.106 (Del. Ch. Oct. 28, 2010) (recognizing that because of the Delaware Supreme Court's exclusive authority to discipline attorneys for violating the Delaware Rules of Professional Conduct, the Delaware Chancery Court has no authority to void an unwritten contingency fee agreement). Thus, under Delaware law, even an unwritten contingency fee agreement between Cozen O'Connor and Mr. Norman would be enforceable.

The same would be true under Pennsylvania law. Although neither party contends that the Court must apply Pennsylvania law, Cozen O'Connor's brief includes some references to Pennsylvania law, *see* Pl.'s Br. [doc. # 38] at 3-5, and Pennsylvania surely has some interest in this

5

case. Unlike the Delaware Rules of Professional Conduct, the Pennsylvania Rules of Professional Conduct do require an attorney to communicate the basis or rate of fees to a client within a reasonable time after commencing a new representation. *See* Penn. R. Prof. Conduct 1.5(b). The Pennsylvania Rules of Professional Conduct also mandate that any contingency fee agreement be set forth in writing and signed by the client. *See* Penn. R. Prof. Conduct 1.5(c). But as in Delaware, the requirements of the "Pennsylvania Rules of Professional Conduct do not carry the force of substantive law, nor do they broaden an attorney's duties in civil legal proceedings; instead they are the basis upon which to sanction a lawyer through the disciplinary process." *In re Adoption of M.M.H.*, 981 A.2d 261, 272 (Pa. Super. Sept. 4, 2009); *see also Silverstein v. Hirst*, 376 Pa. 536, 541 (1954) (holding that despite the mandatory language in the predecessor to Pennsylvania Rule of Professional Conduct 1.5(c), unwritten contingency fee agreements were still enforceable). Thus, under Pennsylvania law as under Delaware law, even an unwritten contingency fee agreement between Cozen O'Connor and Mr. Norman would be enforceable.

Finally, Mr. Norman argues that the Court must apply Connecticut law in this case. The Connecticut Rules of Professional Conduct contain essentially the same requirements as the Pennsylvania Rules of Professional conduct. *See* Conn. R. Prof. Conduct 1.5(b) (requiring – rather than expressing a preference – that the scope of a representation and the basis or rate of fees be communicated to a client within a reasonable time after the commencement of the representation); Conn. R. Prof. Conduct 1.5(c) (requiring that a contingency fee agreement be set forth in writing and signed by the client). Yet in Connecticut – unlike in either Delaware or Pennsylvania – it is not yet

6

conclusively settled whether under Connecticut law, a court may void an unwritten attorney fee agreement as a remedy for an attorney's violation of Rule 1.5(b) or Rule 1.5(c).

It is true that in at least three cases, Connecticut Superior Court judges have held that an attorney is absolutely barred from recovering fees from a client absent a written fee agreement. *See Law Offices of Norman J. Voog, LLC v. Heinecke*, No. DBDCV085003818S, 2009 WL 455556, at \*1-\*2 (Conn. Super. Jan. 28, 2009) (holding that the plaintiff – an attorney – could not recover any fees from a former client because of the plaintiff's failure to comply with Rule 1.5(b)); *Landino v. Black Tie Limousine, Inc.*, No. CV 980408538S, 1999 WL 53279, at \*1-\*2 (Conn. Super. Jan. 26, 1999) (same); *Kantrovitz & Brownstein, PC v. Ruotolo*, No. CV 950371252, 1996 WL 745863, at \*2-\*3 (Conn. Super. Dec. 20, 1996) (same). Yet in the earliest case this Court is aware of that other Connecticut courts have cited for the proposition that attorney fee agreements that violate Rule 1.5(b) or Rule 1.5(c) are *per se* unenforceable, *see Freccia & Plotkin v. Castro*, No. CV 960151637S, 1996 WL 526809 (Conn. Super. Sept. 9, 1996), the Connecticut Superior Court did not in fact so hold. Instead, the Connecticut Superior Court judge in that case merely held that the attorney plaintiff failed to meet its burden of proving the damages it claimed – $7,473.75 in fees plus $1,037.19 in expenses – and instead awarded fees based on the defendants' concession that they agreed to pay a flat fee of $4,000.00. *See id.* at \*1-\*2. The court did note in dicta that "it would violate public policy for the plaintiffs to recover fees based upon an agreement which violates Rule 1.5(c)," *id.* at \*2, but this Court does not find that dicta to be persuasive. Indeed, the Connecticut Superior Court's reliance on Rule 1.5(c) in *Freccia & Plotkin* is somewhat surprising, because it does not appear that either side asserted that the parties' agreement made payment contingent on

7

outcome. *See id.* at *1 (stating that the defendants argued that they agreed to a $4,000.00 flat fee, and that the plaintiffs alleged that the defendants agreed to pay the firm's "usual and customary" hourly rate).

The Court also notes that neither the Connecticut Appellate Court nor the Connecticut Supreme Court has ever held – nor even suggested – that attorney fee agreements are unenforceable if they violate Rule 1.5(b) or Rule 1.5(c). Quite to the contrary, in *Gagne v. Vaccaro*, 225 Conn. 390 (2001), the Connecticut Supreme Court took pains to point out that the Connecticut Rules of Professional Conduct merely provide a framework for the ethical practice of law, and that the Rules themselves explicitly "caution those who seek to rely on their provisions." *Id.* at 403. Specifically, the Connecticut Supreme Court highlighted the passage in the Rules cautioning that "nothing in the Rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a duty." *Id.* (quoting Conn. R. Prof. Conduct, Scope). This Court understands that discussion in *Gagne* as strongly indicating that in Connecticut – just as in Delaware and Pennsylvania – the fact that an attorney fee agreement violates one or more of the Rules of Professional Conduct may subject the attorney who entered the agreement to discipline, but *does not* make the agreement itself unenforceable.

In Connecticut, unlike in Delaware or Pennsylvania, the Rules of Professional Conduct are not the only mechanism for regulating attorney fee agreements. The Connecticut Rules of Professional Conduct are adopted by the judges of the Connecticut Superior Court, not by the legislature. *See* Conn. Gen. Stat. § 52-251c. But in Connecticut, the legislature has also enacted a

8

statute incorporating the requirements of the Connecticut Rules of Professional Conduct under some limited circumstances. *See id*. That statute provides:

> In any claim or civil action to recover damages resulting from personal injury, wrongful death or damage to property occurring on or after October 1, 1987, the attorney and the claimant may provide by contract, *which contract shall comply with all applicable provisions of the rules of professional conduct governing attorneys* adopted by the judges of the Superior Court, that the fee for the attorney shall be paid contingent upon, and as a percentage of: (1) Damages awarded and received by the claimant; or (2) the settlement amount received pursuant to a settlement agreement.

*Id.* (emphasis added). The Connecticut Appellate Court has held that § 52-251c *per se* prohibits an attorney from recovering under an unwritten agreement to represent a client in a personal injury, wrongful death, or property damage case on a contingency fee basis. *See Silver v. Jacobs*, 43 Conn. App. 185, 188-90 (1996), overruled in part on other grounds by *Gagne*, 225 Conn. at 390. The Connecticut Appellate Court has even suggested that § 52-251c prohibits an attorney under the same circumstances from recovering directly from a client under a quantum meruit or unjust enrichment theory, *see Silver*, 43 Conn. App. at 191-93 – though the Connecticut Supreme Court's holding in *Gagne* places that later suggestion into at least some doubt. *See* 225 Conn. at 406-07.

The Court concludes that unwritten contingency fee agreements are unenforceable when they violate § 52-251c – that is, when the attorney agrees to represent the client for a contingency fee in a personal injury, wrongful death, or property damage case – but not under other circumstances. To hold otherwise, the Court would have to ignore the distinction that the Connecticut legislature chose to make when it enacted § 52-251c. There would have been no need for the legislature to incorporate the Connecticut Rules of Professional Conduct by statute under some limited circumstances if those Rules were already fully enforceable as substantive law, and § 52-251c would

9

thus be completely superfluous. To hold otherwise, the Court would also have to ignore the Connecticut Supreme Court's strongly-worded warning in *Gagne* that the Connecticut Rules of Professional Conduct do not create or alter substantive legal obligations. *See* 225 Conn. at 403. Since *Gagne*, only one Connecticut Superior Court judge has voided an attorney fee agreement because it violated one of the Rules of Professional Conduct. *See Voog*, 2009 WL 455556, at *3 (holding that "it would violate public policy for the plaintiff to recover fees based upon an agreement which violates the Rules of Professional Conduct" – specifically, Rule 1.5(b)). The Court does not find the reasoning of *Voog* persuasive and therefore declines to follow that court's holding here.

In sum, an unwritten attorney fee agreement that does not make payment contingent on outcome is enforceable regardless of whether Delaware law, Pennsylvania law, or Connecticut law applies. Furthermore, unwritten contingency fee agreements are fully enforceable under Delaware law and Pennsylvania law. Finally, under Connecticut law, unwritten contingency fee agreements are not enforceable if the agreement relates to a personal injury, wrongful death, or property damage case – but the case in which Cozen O'Connor represented Mr. Norman was most certainly not a personal injury, wrongful death, or property damage case. *See Norman*, 726 F. Supp. 2d at 468 (summarizing Mr. Norman's claims in the Delaware action, which included fraud, breach of contract, conversion, and breach of fiduciary duty). The Court notes in closing that it greatly appreciates the parties' diligent efforts to brief this preliminary issue in advance of the bench trial, at which the Court will examine documentary evidence and hear testimony about the terms of the parties' unwritten attorney fee agreement – including whether the parties ever actually reached an agreement.

IT IS SO ORDERED.

/s/    Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: January 21, 2011.**