UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| COZEN O'CONNOR, PC, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : No. 3:08cv1773 (MRK) |
| | : |
| JEFFREY M. NORMAN, | : |
| | : |
| Defendant. | : |

**RULING AND ORDER**

This case involves a dispute between a law firm and a former client of the law firm over unpaid legal fees and costs. Plaintiff Cozen O'Connor, PC ("Cozen O'Connor"), a national law firm based in Philadelphia, Pennsylvania, seeks to recover both its legal fees and the costs it incurred during its representation of Defendant Jeffrey M. Norman, who is appearing before this Court *pro se*. Cozen O'Connor began representing Mr. Norman sometime in late 2004, and filed a complaint in the Delaware Chancery Court on Mr. Norman's behalf on December 5, 2005. The defendants in that case later removed the action – in which Mr. Norman sought damages against a number of different defendants for breach of contract, breach of fiduciary duties, and other related claims – to the United States District Court for the District of Delaware. *See Norman v. Elkin*, No. 1:06cv5-LPS (D. Del. removed Jan. 3, 2006). Cozen O'Connor withdrew as Mr. Norman's counsel in 2008 following a dispute over Mr. Norman's failure to pay bills.

Cozen O'Connor and Mr. Norman never entered into a written retainer agreement. Mr. Norman now claims that Cozen O'Connor agreed to represent him in the Delaware litigation on a contingency fee basis, and that because Cozen O'Connor withdrew as his counsel before the

litigation was concluded, he owes Cozen O'Connor nothing. This Court previously ruled as a matter of law that assuming there was an agreement – even an unwritten one – between Mr. Norman and Cozen O'Connor, such agreement would be fully enforceable regardless of whether it provided for hourly fees and costs or for a contingency fee, and regardless of whether Connecticut, Pennsylvania, or Delaware law governs. *See* Ruling and Order [doc. # 44], *Cozen O'Connor, PC v. Norman*, No. 3:08cv1773, 2011 WL 219666, at *5 (D. Conn. Jan. 21, 2011).

The Court held a bench trial in this case on February 17, 2011. The entire bench trial lasted just under two hours. Mr. Norman was effectively the only witness who testified at the trial. Attorney James C. O'Connor, a Cozen O'Connor partner, represented the firm at trial and made arguments on the firm's behalf, but he did not give testimony and does not appear to have played any personal role in the firm's former representation of Mr. Norman. The firm relied mainly on documentary evidence to prove its claim against Mr. Norman.

After the bench trial, Mr. Norman sent the Court an affidavit from Attorney Vincent A. Sama of Kaye Scholer, LLP, who Mr. Norman claims acted as his agent in retaining Cozen O'Connor and negotiating a contingency fee agreement with the firm. The Court then permitted Attorney O'Connor to take Mr. Sama's deposition. Attorney O'Connor deposed Mr. Sama on May 4, 2011, and submitted a copy of the deposition transcript to further supplement the bench trial record. The Court also allowed the parties to file post-bench trial briefs following Mr. Sama's deposition. Only Mr. Norman submitted a brief by the June 1, 2011 deadline.

The Court has now carefully considered the evidence and testimony submitted at the bench trial, Mr. Sama's affidavit, Mr. Sama's deposition testimony, and Mr. Norman's brief, as well as the various filings in the Delaware action for background information about that underlying litigation. *See Norman v. Elkin*, No. 1:06cv5-LPS (D. Del. removed Jan. 3, 2006).

What follows are the Court's findings of fact and conclusions of law in accordance with Rule 52(a)(1) of the *Federal Rules of Civil Procedure*. In short, the Court finds as facts that Cozen O'Connor and Mr. Norman never reached an agreement regarding a contingency fee, and that after the firm began representing Mr. Norman, Mr. Norman unequivocally promised to pay the firm for its hourly fees and costs. The Court concludes that Mr. Norman is bound by that promise; that he breached that promise; and that he is liable to Cozen O'Connor for $203,766.50 in fees and $18,930.56 in costs, for a total of $222,697.06.

## I.

Plaintiff Cozen O'Connor is a professional corporation organization under the laws of the Commonwealth of Pennsylvania. Defendant Jeffrey M. Norman is a citizen of the State of Connecticut. Mr. Norman was at one time one of only two shareholders in US Mobilcomm, Inc. ("US Mobilcomm"), a Delaware corporation with its principal place of business in Pennsylvania. *See* Complaint, *Norman v. Elkin*, No. 1:06cv5-LPS (D. Del. Jan. 3, 2006), ECF No. 1. US Mobilcomm's business involved acquiring 220 MHz spectrum broadcast licenses from the FCC. *See id.* The only other shareholder in US Mobilcomm was David W. Elkin, who owned a majority of the company's stock. *See id.* Mr. Elkin and Richard M. Shorin were both officers of US Mobilcomm. *See id.* Mr. Norman was not himself an officer of the company.

In 2004, Mr. Norman decided to bring a lawsuit against Mr. Elkin, the Elkin Group, Mr. Shorin and US Mobilcomm. *See id.* Mr. Norman believed that Mr. Elkin had engaged in various acts of self-dealing in his capacity as an officer of US Mobilcomm, and that Mr. Shorin had aided Mr. Elkin's wrongful acts. *See id.* In the summer of 2004, a colleague of Mr. Norman's referred him to Cozen O'Connor. *See* Sama Aff. ¶ 3. After learning about Cozen O'Connor, Mr. Norman contacted his friend Mr. Sama, a partner at a major New York law firm, to inquire about

Cozen O'Connor's reputation. *See id*. Mr. Sama told Mr. Norman that Cozen O'Connor had a good reputation. *See id.*

In August 2004, Mr. Sama contacted Kevin Berry at Cozen O'Connor on Mr. Norman's behalf. *See id*. ¶ 4. Mr. Berry no longer works for Cozen O'Connor, and is now a partner at a different firm. Mr. Sama recalls that he explained Mr. Norman's case to Mr. Berry, and that he told Mr. Berry that Mr. Norman could not afford to pay Cozen O'Connor's fees and other expenses, and that Mr. Norman would instead pay Cozen O'Connor a portion of his eventual recovery in the Delaware litigation. *See id.* But neither Mr. Sama nor anyone else has provided any evidence to the Court about what the specific terms of the alleged contingency fee agreement were. Mr. Sama further recalls that he told Mr. Berry that he would draft a proposed complaint himself and would give the proposed complaint to Cozen O'Connor for the firm to file on Mr. Norman's behalf. *See id.* Mr. Sama later emailed Mr. Berry a proposed complaint on October 6, 2004. *See id.* Mr. Sama did not have any further discussions with Mr. Berry – or with anyone else at Cozen O'Connor for that matter – regarding Mr. Norman's fee arrangement until 2008. *See* Sama Dep. 8:19-9:4.

The Court emphasizes that neither party called Mr. Sama or Mr. Berry to testify at the bench trial. However, Mr. Norman did submit an affidavit from Mr. Sama and Attorney O'Connor submitted a transcript of Mr. Sama's deposition. Mr. Sama did not state in either his affidavit or his deposition testimony that he told Mr. Norman after the conversation with Mr. Berry that Cozen O'Connor had agreed to represent Mr. Norman on a contingency fee basis. And again, Mr. Sama has provided no specific details about what he thinks the terms of the supposed contingency fee agreement were. The Court also emphasizes that Mr. Sama has admitted that

after his 2004 conversation with Mr. Berry, he did not communicate again with anyone at Cozen O'Connor or with Mr. Norman about the fee arrangement until early 2008. *See id.*

Cozen O'Connor and Mr. Norman never executed a written retainer agreement. If Cozen O'Connor had required Mr. Norman to sign a written agreement, this would be a much easier case. In any case, even though Cozen O'Connor did not have a written retainer agreement with Mr. Norman, on December 5, 2005, the firm filed a complaint in Delaware on Mr. Norman's behalf. *See* Complaint, *Norman v. Elkin*, No. 1:06cv5-LPS (D. Del. Jan. 3, 2006), ECF No. 1. The complaint was filed under the names of two Cozen O'Connor attorneys, Sean J. Bellew and David A. Felice. *See id.* Mr. Bellew and Mr. Felice have since left Cozen O'Connor to work at a different law firm. Neither Mr. Bellew nor Mr. Felice testified at the bench trial.

From December 2005 through April 2008, Cozen O'Connor represented Mr. Norman in the Delaware action by and through various attorneys, and expended significant legal fees and costs on Mr. Norman's behalf. At some point between August 2006 and February 2007, Cozen O'Connor began to have disputes with Mr. Norman over his failure to pay the monthly bills that he was by that time regularly receiving from Cozen O'Connor. *See* Pl.'s Ex. 1.

On February 26, 2007, Mr. Norman emailed Mr. Bellew to follow up on a previous email regarding his failure to pay bills from Cozen O'Connor. *See* Pl.'s Ex. 3. The previous email from Mr. Bellew was not introduced into the bench trial record. In the follow-up email, Mr. Norman represented to Mr. Bellew that he was in the process of refinancing his home, and hoped that the refinancing would be finished soon so that he could start paying Cozen O'Connor. *See id.* Mr. Norman wrote: "Please know I am making every effort to get this complete so I can get the arrears to an acceptable level." *Id.* Mr. Norman's email did not indicate – even indirectly – that he objected to the bills or that he believed he had a contingency fee agreement with the firm.

5

On March 9, 2007, Mr. Norman sent a second email to Mr. Bellew. *See id.* In the email, Mr. Norman did not state that he understood that Cozen O'Connor was supposed to be representing him on a contingency fee basis. To the contrary, he expressed his desire to pay outstanding amounts due, and acknowledged that the amount he owed was not in dispute:

> Look I want to get back to you regarding the outstanding invoices which is over $150,000. I want to make it clear I want to pay this and acknowledge the amount due is not in dispute. I am in the process of doing a complicated refinancing and expect the financing to close within a 30 day period of time. At which point I will make a payment of $25,000-$30,000. I also will be in a position to make monthly payments of $10,000 -$15,000. This will all be in an effort to get the receivable within a reasonable striking distance prior to trial.
>
> I certainly appreciate your effort and certainly do not expect you to try this case without there being a substantial amount of this receivable paid and the promise that it is fully reconciled by the time the case is concluded.

*Id.*

On March 22, 2007, Mr. Bellew responded to Mr. Norman's email. *See id.* Mr. Bellew indicated that so long as Mr. Norman could make a substantial payment by April 9, 2007, he could probably convince Cozen O'Connor's management to continue representing Mr. Norman. *See id.* Mr. Bellew further indicated, however, the Mr. Norman needed to pay all overdue amounts owed to Cozen O'Connor's vendors within the next week to ten days. *See id.* Mr. Norman apparently did not respond to Mr. Bellew's email, and Mr. Bellew therefore emailed Mr. Norman again to follow up on April 9, 2007. *See id.* When Mr. Norman failed to respond to the second email, Mr. Bellew sent Mr. Norman a third email on April 17, 2011 indicating that the firm needed to hear from Mr. Norman immediately if it was going to continue to represent him in the Delaware action. *See id.*

Despite Mr. Norman's previous promises, he did not pay any outstanding invoices and did not contact the firm between April 17, 2007 and May 30, 2007. He made no attempt to

contact Cozen O'Connor in order to notify the firm that he understood he had a contingency fee agreement with the firm. Instead, he continued to evade Cozen O'Connor and continued to delay payment of the amounts that he had previously acknowledged he owed to the firm.

> On May 30, 2007, Mr. Norman finally wrote back to Mr. Bellew as follows:
>
> I wanted to let you know my refinance finally closed last week. Unfortunately, after the money was wired it turns out Merrill Lynch discovered a discrepancy in the payoff that they send the lender and title company. We are trying to work thr[ough] that once that is done I will clean up most of the outstanding vendor balances.
>
> In the meantime, I [am] trying to explore avenues to borrow the funds, to make a substantial payment towards the balance prior to trial.
>
> Thank you for your patience in this matter.

Pl.'s Ex. 4. Seven minutes later, apparently under the mistaken impression that his prior email had been stuck in his email outbox, Mr. Norman sent another email to Mr. Bellew to update him on the "outstanding balance" he owed to the firm. *Id.* Contradicting what he had said in his previous email, he stated that his home refinancing was "still in progress." *Id.*

On August 14, 2007, Mr. Bellew sent Mr. Norman a formal letter stating that he and Mr. Norman had been discussing the status of Mr. Norman's receivable and Mr. Norman's intent to pay down his outstanding balance for more than a year. *See* Pl.'s Ex. 1. The letter indicated that Mr. Bellew had understood since as early as November 2006 that Mr. Norman was going to refinance his home in order to pay Cozen O'Connor the amounts he owed on outstanding invoices. *See id.* The letter informed Mr. Norman that if he did not make arrangements to pay Cozen O'Connor by August 22, 2007, Cozen O'Connor would likely withdraw as his counsel. *See id.* Mr. Bellew forwarded a copy of the letter to Mr. Berry, the Cozen O'Connor attorney who Mr. Sama remembers as having agreed to a contingency fee arrangement back in 2004. *See*

7

*id.* There is no evidence that Mr. Berry replied to the forwarded letter. Neither party called Mr. Berry to testify at the bench trial.

Finally, on December 31, 2007, Cozen O'Connor sent Mr. Norman another letter stating that Mr. Norman owed $210,480.23 in invoices, and asking Mr. Norman to agree to pay half the outstanding amount due to the firm no later than January 25, 2008. *See* Pl.'s Ex. 2. Mr. Norman did not sign the letter. *See id.* However, he also did not write to Cozen O'Connor to object, or to state his position that he understood that Cozen O'Connor had agreed to represent him on a contingency fee basis back in 2004.

In January 2008, Mr. Norman contacted Mr. Sama to ask for Mr. Sama's help with his bill payment problems. *See* Sama Aff. ¶ 6. At Mr. Norman's request, Mr. Sama attempted to contact Ann Thornton Field, a partner at Cozen O'Connor. *See id.* In March or April 2008, Mr. Sama spoke to Ms. Field and informed her that it was his understanding that Cozen O'Connor had agreed to represent Mr. Norman on a contingency fee basis. *See id.* Mr. Sama recalls that Ms. Field did not believe him, and that Ms. Field indicated that Cozen O'Connor planned to sue Mr. Norman in order to collect the legal fees and costs it incurred during the firm's representation of Mr. Norman. *See id.*

In July 2008, Cozen O'Connor withdrew as Mr. Norman' counsel in the Delaware action. *See* Substitution of Counsel, *Norman v. Elkin*, No. 1:06cv5-LPS (D. Del. July 24, 2008), ECF No. 78. By the time that the firm withdrew, the firm had incurred $203,766.50 in legal fees in its representation of Mr. Norman. In addition, the firm had paid a total of $18,930.56 in out-of-pocket costs in its representation of Mr. Norman. Mr. Bellew – who had by that time left Cozen O'Connor – and his new law firm have continued to represent Mr. Norman in the Delaware action to this day. *See* Notice of Appearance, *Norman v. Elkin*, No. 1:06cv5-LPS (D. Del. Nov.

6, 2008), ECF No. 80. Mr. Norman admitted at the bench trial that he has made some payments to Mr. Bellew's new law firm since that firm took over from Cozen O'Connor.

Mr. Norman initially prevailed in the Delaware action, but after a post-trial motion, the district court judge entered judgment as a matter of law for the defendants on a number of Mr. Norman's claims and significantly reduced Mr. Norman's damage award. *See Norman v. Elkin*, 726 F. Supp. 2d 464, 480 (D. Del. 2010). The Delaware action is still tied up in further post-trial motions urging the district court to either reinstate the verdict on behalf of Mr. Norman or grant Mr. Norman a new trial. *See* Plaintiff's Motion to Alter or Amend the Jury Verdict and Judgment, *Norman v. Elkin*, No. 1:06cv5-LPS (D. Del. Aug. 27, 2010), ECF No. 159.

At the bench trial in this case, Mr. Norman testified that he always understood from Mr. Sama that Cozen O'Connor had agreed to represent him on a contingency fee basis. However, Mr. Norman did not specify when he learned about the contingency fee arrangement, or what the terms of the alleged contingency fee agreement were. Mr. Norman also admitted that he never personally spoke to anyone at the firm about any contingency fee agreement. Mr. Sama likewise has not specified when he told Mr. Norman about the contingency fee agreement or what exactly he told Mr. Norman about the agreement.

According to Mr. Sama's affidavit and deposition testimony, the only communications Mr. Sama ever had with anyone at Cozen O'Connor were his initial communications with Mr. Berry in 2004 and his communications with Ms. Field in 2008. Mr. Sama did not communicate with anyone at Cozen O'Connor about the firm's agreement to represent Mr. Norman between 2004 and 2008. He has no personal knowledge whatsoever about Mr. Norman's communications and interactions with Cozen O'Connor between 2004 and 2008. *See* Sama Dep. 8:19-9:4.

## II.

In the Court's prior ruling in this case, the Court concluded that under Connecticut, Delaware, and Pennsylvania law, oral or implied attorney-client fee agreements are fully enforceable, even if they might violate various ethical codes. *See* Ruling and Order [doc. # 44], *Cozen O'Connor*, 2011 WL 219666, at *5. The Court therefore found that it was unnecessary to perform a choice-of-law analysis at that time. *See id.* at *1. Because neither party has identified any other possible outcome-determinative discrepancies among Connecticut, Delaware, and Pennsylvania law, the Court will apply the contract law principles of Connecticut, the forum state, in order to resolve this case. *See Chien v. Skystar Bio Pharmaceutical Corp.*, 623 F.Supp.2d 255, 262 n.6 (D. Conn. 2009) (noting that under Connecticut choice of law principles, when there is no outcome determinative conflict between the laws of the states with an interest in the litigation, there is no need to determine which state's law should be applied).

Cozen O'Connor argues that it is entitled to recover from Mr. Norman for breach of contract. *See* Pl.'s Proposed Findings of Fact and Conclusions of Law [doc. # 35] at 3. The basic elements of a cause of action for breach of contract are contract formation, performance, breach, and damages. *See Bross v. Hillside Acres, Inc.*, 92 Conn. App. 773, 782 (2006). "It is a fundamental principle of contract law that the existence and terms of a contract are to be determined from the intent of the parties. The parties' intentions manifested by their acts and words are essential to the court's determination of whether a contract was entered into and what its terms were." *Auto Glass Express, Inc. v. Hanover Insurance Co.*, 293 Conn. 218, 225 (2009) (citation and alterations omitted). Unless the parties have expressed their agreement in a clear and unambiguous writing, "the parties' intent is a question of fact." *Id.* at 225.

Cozen O'Connor relies on an implied contract theory. *See* Pl.'s Proposed Findings of Fact and Conclusions of Law [doc. # 35] at 3. "An implied in fact contract is the same as an express contract, except that assent is not expressed in words, but is implied from the conduct of the parties." *Id.* at 224 n.7 (citation omitted). For reasons that will become clearer below, it is unnecessary to invoke the concept of an implied contract in this case. Mr. Norman expressed his agreement to pay Cozen O'Connor's hourly fees and costs in writing on more than one occasion.

The Court turns to the first element of Cozen O'Connor's claim: contract formation. Neither party disputes that Mr. Norman agreed to retain Cozen O'Connor as his counsel. Rather, the disagreement is really about what the terms of the retainer agreement were and when the parties agreed to those particular terms. Mr. Norman believes that Mr. Sama's conversation with Mr. Berry represented a mutual agreement that Cozen O'Connor would represent Mr. Norman on a contingency fee basis, though he has never specified what the terms of the contingency agreement were. Cozen O'Connor's position is that both parties understood all along that Mr. Norman would pay the firm's costs and its hourly rate, and that in any case, Mr. Norman is bound by the repeated promises he made in 2007 to pay Cozen O'Connor's hourly fees and costs. *See* Pl.'s Ex. 3; Pl.'s Ex. 4.

In the Court's view, the evidence in the bench trial record does not support Mr. Norman's position that a contingency fee agreement was reached in 2004. Even assuming that Mr. Sama acted as Mr. Norman's agent when he contacted Mr. Berry in 2004, and even assuming that Mr. Berry had the authority to bind Cozen O'Connor during the conversation with Mr. Sama, the Court finds as a fact that Mr. Sama and Mr. Berry did not mutually agree to a contingency fee arrangement during that conversation. Mr. Sama stated in his affidavit and in his deposition testimony that he recalled telling Mr. Berry that Mr. Norman would only be able to proceed on a

contingency fee basis. But Mr. Sama has never indicated how Mr. Berry responded, and has never stated that Mr. Berry actually agreed to a contingency fee arrangement. Cozen O'Connor did not actually file the complaint in Delaware until almost a year after Mr. Sama's call to Mr. Berry, and Mr. Sama has no knowledge about any communications that may have occurred between Cozen O'Connor and Mr. Norman during that rather lengthy period. Mr. Sama's statements alone thus do not show a mutual agreement. *See Geary v. Wentworth Laboratories, Inc.*, 60 Conn. App. 622, 627 (2000).

Mr. Norman's testimony at trial that he always understood that his agreement with Cozen O'Connor provided for a contingency fee was not credible. When Cozen O'Connor began sending Mr. Norman monthly bills and demanding payment on the bill, Mr. Norman never protested and never raised the contingency fee issue with anyone. It is not credible that a client who actually believed he had a contingency fee agreement with his attorney would not only fail to object when that attorney started sending him monthly bills, but would even send that attorney multiple emails conceding that he owed the attorney more than $150,000 in outstanding bills. *See, e.g.*, Pl.'s Ex. 3. Mr. Norman's explanation about why he sent those emails – he allegedly did so only because Mr. Bellew encouraged him to lie about his willingness to pay – is also not credible. The Court is particularly unwilling to credit Mr. Norman's strange story in light of the fact that Mr. Bellew still represents Mr. Norman in the Delaware action on behalf of a different law firm, and that Mr. Norman chose not to call Mr. Bellew testify in support of that strange story at the bench trial.

Since Mr. Berry also did not testify at the bench trial – or even submit an affidavit setting forth his recollection of the events at issue in this case – the Court has no way to determine whether Mr. Norman's recollection of his conversation with Mr. Berry is accurate or whether Mr.

12

Berry understood that he was agreeing to a contingency fee arrangement. The Court is unwilling to rely on Mr. Sama's rather vague memory about the conversation and Mr. Norman's hard-to-believe testimony as conclusive evidence that a binding contingency fee agreement was formed in 2004. In sum, even when combined with Mr. Norman's testimony, Mr. Sama's statements are not sufficient to show that Mr. Norman and Cozen O'Connor reached an agreement regarding a contingency fee agreement. *See Geary*, 60 Conn. at 627 ("To form a valid and binding contract . . . there must be a *mutual* understanding of the terms . . . ." (emphasis added)).

The Court also finds as a fact that Mr. Norman agreed to pay Cozen O'Connor's monthly bills for legal bills and out-of-pocket costs. *See* Pl.'s Ex. 3; Pl.'s Ex. 4. Indeed, as early as March 2007, in response to demands from Cozen O'Connor, he specifically agreed in writing to pay Cozen O'Connor more than $150,000 for the services it had already rendered at that time. *See* Pl.'s Ex. 3. In reliance on that promise, Cozen O'Connor continued to represent him for another year in the Delaware litigation. Cozen O'Connor's continuing correspondence with Mr. Norman indicates that Mr. Bellew and others at Cozen O'Connor all understood that Mr. Norman had agreed to pay the firm's monthly bills and costs, and that no one at the firm understood that Mr. Norman had reached a contingency fee agreement with the firm. Thus, Cozen O'Connor has shown by more than a preponderance of the evidence that there was a mutual agreement, expressed in clear and certain terms, that Mr. Norman would responsible for paying Cozen O'Connor's hourly fees and costs. *See Geary*, 60 Conn. App. at 627 (providing that to form a binding contract, the terms of the parties' agreement must be "definite and certain").

The Court notes that there is no evidence at all that Mr. Norman himself ever made any attempt to negotiate for a contingency fee agreement with Cozen O'Connor. Mr. Norman simply never asked anyone at Cozen O'Connor about entering into a contingency fee arrangement. His

13

only argument throughout this case has been that Mr. Sama initially negotiated a contingency fee, that he always believed he had a contingency fee agreement, and that Mr. Bellew encouraged Mr. Norman to lie to Cozen O'Connor about his willingness to pay monthly bills and indicated that everything would be okay if only Mr. Norman would go ahead and lie to the firm.

If the Court were to credit Mr. Norman's story, it would implicate Mr. Bellew in a number of serious violations of his professional obligations. According to Mr. Norman, while Mr. Bellew was still working for Cozen O'Connor, Mr. Bellew encouraged Mr. Norman to falsely promise to pay hundreds of thousands of dollars in outstanding legal bills when he in fact intended to contest them. Relying on Mr. Bellew's encouragement, Mr. Norman then lied to Cozen O'Connor about his willingness to start paying his debts to the firm, and in reliance on Mr. Norman's promises, Cozen O'Connor continued to work on Mr. Norman's case for an additional year. Mr. Bellew then left Cozen O'Connor for a different law firm, and when Cozen O'Connor withdrew as Mr. Norman's counsel, Mr. Norman still refused to pay the bills from Cozen O'Connor and took his business to Mr. Bellew's new law firm. Having refused to pay bills from Cozen O'Connor as promised, Mr. Norman began paying bills from Mr. Bellew's new law firm.

Mr. Norman's story could be true, but the Court did not find Mr. Norman to be a credible witness, and Mr. Norman did not introduce any documentary evidence or any supporting witnesses to bolster that story. Cozen O'Connor, on the other hand, has introduced seemingly reliable and essentially uncontested documentary evidence showing that Mr. Norman expressly agreed to pay the firm's hourly fees and costs in his 2007 emails. The Court therefore finds that the only mutual agreement the parties ever reached was for Mr. Norman to pay Cozen O'Connor's hourly rate and costs. There can be no doubt that Cozen O'Connor lived up to its end of the bargain, that Mr. Norman breached the agreement by refusing to pay bills after he had

promised to do so, and that Cozen O'Connor suffered damages as a result of Mr. Norman's breach of the mutual agreement. *See Bross*, 92 Conn. App. at 782. Thus, in accordance with the Court's prior ruling in this case that whatever unwritten retainer agreement the parties reached would be enforceable as a matter of law even if such agreement violated ethical rules, *see* Ruling and Order [doc. # 44], *Cozen O'Connor*, 2011 WL 219666, at *5, the Court concludes that Mr. Norman is liable to Cozen O'Connor for breach of contract.

### III.

As a result of the Court's findings of fact and conclusions of law, judgment will be entered against Mr. Norman in the amount of $203,766.50 in outstanding legal fees, plus $18,930.56 in the firm's out-of-pocket costs incurred on behalf of Mr. Norman, for a total judgment of $222,697.06. While Cozen O'Connor's Complaint [doc. # 1] seeks a judgment including costs, interest, and counsel fees, its Proposed Findings of Fact and Conclusions of Law [doc. # 35] contains no references to costs, interest, or counsel fees. Cozen O'Connor has not made any arguments regarding its entitlement to recover costs, interest, and counsel fees in addition to the $222,697.06 in unpaid bills. The Court therefore declines to award prejudgment interest, and will require each side to bear its own costs and fees incurred in this action. **The Clerk is directed to enter judgment accordingly and to close this file.**

IT IS SO ORDERED.

/s/     Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: June 6, 2011.**